CITY OF OROVILLE v. INDIANA GOLD-DREDGING. CO.

(Circuit Court, N. D. California. October 20, 1908.)

No. 14,773.

1. WATERS AND WATER COURSES (§ 52*)—OBSTRUCTION OF STREAM—RIGHT TO NATURAL FLOW.

A company owning a part of the bed of a stream which it is devoting to private purposes is bound to exercise the highest care not to so obstruct the stream as to cause it to overflow and injure property on the banks in cases of freshets, which, although unusual, are known to have occurred in the past and are to be anticipated. Such freshets cannot be considered acts of God nor extraordinary floods.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 44; Dec. Dig. § 52.*]

2. WATERS AND WATER COURSES (§ 61*) — OBSTRUCTING NATURAL FLOW OF STREAM—INJUNCTION.

Defendant was dredging for gold in the bottom of a river in such manner as to leave a ridge of gravel, sand, and stones across a large part of the stream from 10 to 30 feet in height above the level of the bed of the stream, and obstructing its flow at a point opposite the site of complainant city, and increasing the danger of overflow, which had on two occasions within 50 years caused great damage to property in the city. *Held*, that the danger to the public health and welfare from such obstruction was such as to entitle complainant to an injunction to restrain the extension of the work in such manner as to increase the obstruction.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 61.*]

In Equity. On motion to dissolve injunction.

Robert T. Devlin, A. P. Black, and Carleton Gray, for complainant. R. F. Lewis and Ralph C. Harrison, for defendant.

DIETRICH, District Judge. The city of Oroville is situated upon the left bank of the Feather river, the town site comprising a comparatively level tract of land bounded upon the north and the west by the river channel, which is shallow and of variable width. The defendant is the owner of a portion of the bed of the river, and has engaged in extracting the gold from the gravel thereof by means of a dredge. The dredge was constructed on the left bank of the river near the point where it bends to the south, and after its completion it was moved out into the channel almost at right angles to the current for a distance of about 800 feet, and thence down and substantially parallel with the course of the stream a considerable distance. Behind the dredge and throughout its entire course a ridge of sand, gravel, and stones is left, varying from 10 to 30 feet in height above the level of the bed of the stream, and forming a continuous barrier to the free flow of the water, reaching from the left bank to within

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

about 300 feet of the right bank.   No part of the channel thus dredged is submerged during the low-water season, but during a portion of each year the entire bed is covered by water.   The river is supplied by both rain and melting snow, and after the manner of mountain streams, the fluctuations in the flow are great and irregular both as to time and degree.   It is conceded that a rise of 18 feet above low water is not unusual, and at least twice within 50 years it has reached approximately 30 feet.   One of these extreme freshets occurred in the year 1907 (before defendant commenced its operations), at which time much of the town site was submerged, to the great inconvenience and damage of the complainant and its inhabitants.   To provide against a recurrence of such a catastrophe, plaintiff at once took steps to erect a levee along the left bank of the river, which, however, has not been completed.

Held that:

1. The primary function of a natural water course being to carry away and discharge the waters which it receives, the defendant, in altering the channel of Feather river, owes to the plaintiff the duty not only of making provision for the ordinary flow of water, but of exercising the highest circumspection to avoid obstructions which will injuriously affect the complainant in periods of unusual high water. While the defendant is not bound to provide against extraordinary floods, which competent and skilled persons familiar with the history of the river and with its watershed cannot reasonably anticipate, it cannot ignore freshets which are known to occur, although rarely and at irregular intervals.   Neither rarity nor irregularity is a legal equivalent of "extraordinary," and where a stream is commonly subject to great fluctuations, as here, floods which have occurred twice within 50 years, and which differ from other freshets only in degree, and which are the result not of abnormal conditions, but of the conjunction, infrequent and irregular though it may be, of causes, each of which naturally and commonly recurs, such as snows, rains, winds, and sunshine, cannot be deemed to be acts of God.   The mere apprehension of possible danger is insufficient to invoke equitable interference against the prosecution of a useful or profitable enterprise; but here, while the time of a repetition of the flood of 1907 cannot be calculated and is wholly uncertain, the fact of such recurrence is not only possible but highly probable, and neither a consideration of the defendant's profit, nor even the preservation of the enterprise itself, furnishes a sufficient reason for compelling the complainant to fortify itself against the added peril incident to the defendant's operations or stand in constant fear of the dire consequences of an overflow, which, while it might not occur in a generation, might spread disaster at any season.   The health and safety of a populous community are involved, and, if it were otherwise, there is no public policy which is more solicitous for the acquisition of the wealth in the bed of a river than for the preservation and protection of that which has already been created upon its banks.

2. For light reasons courts will not grant interlocutory injunctions, but it is not the invariable rule that relief will be denied unless it ap-

pears free from all possibility of doubt that injury will inevitably flow from the act sought to be restrained. Regard must be had for the nature of the threatened conduct complained of, and for the character and extent of the probable as well as the inevitable results thereof, and for all the other circumstances of the case. Where, as here, upon the one side there is to be considered only the profit of a purely private enterprise, and, upon the other, the health and safety and property of a large number of people, and where the injury, if it is actually realized, will be immeasurable and irreparable, and where the obstruction is of such a character that it cannot be removed or materially diminished in the presence of imminently impending disaster, the court may properly grant or continue an interlocutory injunction upon a showing which is not entirely free from conflict and doubt.

3. In restraining the threatened conduct of a defendant during the pendency of a suit, as a general rule, a court will restrict the scope of the injunctive order to the protection of the substantial rights of the applicant, the aim being to interfere with the operations of the defendant only so far as may be actually necessary.

That part of the ridge of gravel left by the defendant parallel with the thread of the stream is in itself not a material obstruction, and therefore, while the motion to dissolve will be denied, the injunction will be modified so as to permit the defendant to elongate this ridge indefinitely down the stream, upon the condition that it make an opening in the transverse ridge at least 50 feet in width.